ST. PAUL BOOM COMPANY, Respondent, vs. KEMP, Appellant.

*April 8—May 2, 1905.*

*Replevin: Logs and timber: Memoranda: Witnesses: Examination: Competency: Nonsuit: Evidence: Special verdict: Changing answers by court: Wilful intermingling of lumber: Apportionment: Damages: Printed case: Costs.*

1. In an action to recover logs and lumber manufactured therefrom, one of plaintiff's witnesses testified that he made memoranda of log marks, as he found them on the logs, in a note book which he produced. The witness's statement was evidently an assertion that he made the entries and that they were correctly

made. *Held*, that it was proper to permit the witness, while testifying, to read from the entries made by him.

2. Where a witness was shown to have been employed in plaintiff's logging business for a number of years, to have learned the general market value of pine lumber, and, prior to testifying, to have learned of market values from reported prices and from sales made by him, it is not error to permit him to give his opinion as to the market value of pine logs sought to be recovered in a replevin action.

3. In an action where the ownership of certain marked logs and lumber sawed therefrom was in controversy, a witness who had personal knowledge that the log marks testified to by him had been and were in fact used by various parties doing a logging business upon the Mississippi river, from which river the logs in question were obtained by defendant, could testify concerning the filing of log marks under the laws of the state of Minnesota, the custom of boom companies in handling stray logs, and as to his knowledge of the ownership of the logs bearing such marks, for the purpose of identifying and showing ownership of the logs in question, without first showing that such log marks were recorded under a Minnesota statute, requiring a person cutting logs to cause a copy of his adopted log mark to be recorded before marking them.

4. In an action of replevin for certain logs and lumber sawed therefrom, the facts and circumstances, stated in the opinion, are *held* to furnish sufficient ground for denying a motion for a nonsuit.

5. In an action of replevin for logs and lumber sawed therefrom, the jury found, in answer to a question of the special verdict, that the defendant had not wilfully and indiscriminately intermixed these with his own logs and lumber so that they could not be distinguished from his own property. Under the evidence, stated in the opinion, it is *held* that there was no basis for such answer, and that the trial court was justified in changing the answer to the question.

6. In an action of replevin for logs and lumber sawed therefrom, the finding of the jury was to the effect that the total value of the logs was $120; that the value of the unsawed logs was $30, and that the amount of lumber manufactured therefrom, amounting to 6,000 feet, was indiscriminately and wilfully intermingled by defendant with other lumber owned by him of similar description, quality, and value. The officer under the writ levied upon the unsawed logs and about 20,000 feet of lumber, and the judgment awarded the whole amount levied upon to the plaintiff. *Held* error, since the plaintiff was only enti-

tled to the logs seized, its full proportion out of the entire quantity of lumber seized and the costs of the action, and the defendant was entitled to the return of the excess of the lumber so seized, or, if the lumber could not be returned, to its value, without any damages for the seizure of such excess under the writ.

7. A printed case which contains duplication of record matters, and fails to abridge the record to the extent necessary for the proper presentation of the questions before the court, fails to comply with Supreme Court Rule VIII, and for those reasons the amount of taxable costs was limited.

APPEAL from a judgment of the circuit court for Pierce county: JAMES O'NEILL, Judge. *Reversed.*

Action of replevin to recover pine lumber and logs. It appears that plaintiff, a corporation, maintains a boom and rafting works in the Mississippi river below Fort Snelling, Minnesota, and makes a business of gathering stray logs in the river, holding them, and accounting for them to the various owners, under an agreement with them. It had been so engaged for a number of years prior to the time in question. On May 12, 1902, plaintiff's employees had gathered sixty-three pine logs which had escaped from its boom and were floating in the river; they had brailed and landed these logs on the north side of the river, about four and a half miles above Prescott, Wisconsin, where two of plaintiff's employees—Murray and Knippenberger—held them in their custody. While they so held them, one James Hackett dispossessed them of this brail of logs, floated them down the river to defendant's mill, and sold them to him for $19.50. Defendant sawed about three quarters of the logs into lumber, and piled it, with other lumber, in his yard. The officer recovered some of the unsawed logs, and took about 20,000 feet of lumber from piles in defendant's yard containing some of the lumber sawed out of these logs. From the jury's findings it appears that the logs so sawed yielded about 6,000 feet of lumber; that defendant had been informed that the logs had been taken from plaintiff by Hackett, and that he had wrongfully taken them;

that, before he sawed them into lumber, defendant had been informed that Hackett had acquired no title to them; and that the brail of logs, before sawing, was worth $120. It also appeared that plaintiff's officer and agent were well acquainted with the marks on these logs, and found them on the logs and some of the lumber in defendant's yard. The jury further found that plaintiff was lawfully in possession of the logs at the time Hackett took them from its agents and employees; that Hackett wrongfully took the brail of logs from its possession, and wrongfully sold and delivered them to defendant; that defendant had good reason to believe that Hackett had no title to the logs when defendant bought them from him; that, before he sawed them into lumber, defendant was notified that plaintiff claimed ownership of the logs; that the brail of logs, when manufactured into lumber, would yield 8,000 feet; that the value of the logs replevied by plaintiff was $30; that the value of the 20,000 feet of lumber was $360; and that the value of the lumber so replevied exceeded in value the logs so manufactured into lumber in the sum of $270. The jury also found, in answer to question No. 4 in the special verdict, that the defendant had not wilfully and indiscriminately intermixed these logs and the lumber manufactured out of them with his own logs and lumber, so that these logs and this lumber could not be distinguished from his property. Upon motion by plaintiff the court changed the negative finding of the jury on this question to an affirmative one on the ground that the jury's finding was not supported by the evidence. Before judgment, defendant moved the court to change the answers of the jury to the first, second, and third interrogatories in the special verdict by striking out the answers "Yes" to each of them, and by inserting the answer "No." The court denied this motion and defendant duly excepted to such ruling. After the verdict had been framed in respect to question 4 as directed by the court, the court awarded judgment upon the special verdict; the judgment being that plaint-

iff recover and hold the 2,000 feet of logs and the 20,000 feet of lumber so seized by the sheriff under the writ of replevin, and for the costs of the action.    This is an appeal from such judgment.

*W. C. Owen,* for the appellant.

For the respondent there was a brief by *John C. Foley,* attorney, and *F. M. Wilson,* of counsel, and oral argument by *Mr. Foley.*

SIEBECKER, J.    Exception is urged to the ruling permitting a witness to read from a memorandum while testifying. One of the plaintiff's witnesses testified that he made memoranda of log marks, as he found them on the logs, in a notebook which he produced, and the court thereupon permitted him to read the entries so made.    It is urged that this does not furnish a sufficient foundation to make his evidence competent. The court evidently regarded the witness's statement as equivalent to the assertion that he had made the entries and that they were correctly made.    We think this significance can properly be ascribed to the answer of the witness.    Under such circumstances it was proper to allow the witness to read from the entries made by him.    *Manning v. School Dist. No. 6,* 124 Wis. 84, 102 N. W. 356.

The same witness was also permitted to give his opinion of the market value of the logs in question.    It appears that he had been employed in the plaintiff's logging business for a number of years, and had learned the general market value of pine lumber, and that prior to testifying he had learned of market values from reported prices and from sales made by him.    He was sufficiently informed to be qualified to speak on this subject.

Error is alleged upon the ground that the court permitted Mr. Chute, plaintiff's manager, secretary, and treasurer, to testify concerning the filing of log marks under the laws of the state of Minnesota, the custom of boom companies in handling

stray marked logs, and as to his knowledge of the ownership of the logs bearing the marks in question. As stated by appellant, the testimony, if relevant, was material to the question of the ownership of the lumber in controversy. Counsel assumes that, under the statute of Minnesota, a person who has cut logs should, before marking them, cause a copy of the adopted log mark to be recorded in the surveyor general's office, and that when so recorded the log mark is deemed to be the property of such person, and such mark is *prima facie* proof of ownership to the logs bearing it. It is contended that, since the lumber was cut within the territory wherein this law applies, it was error to permit the witness to testify as to the marks on the logs, and as to his knowledge of the ones used by certain parties, without first showing that they were recorded under the Minnesota law. The trial court received the evidence to identify the property and to show ownership upon the ground that it appeared that the witness had personal knowledge that the log marks testified to by him had been and were in fact used by various parties doing a logging business upon the Mississippi river, and that it was competent evidence for those purposes, though there was no proof showing that they had been recorded as prescribed by the Minnesota statute. No valid reason is presented impeaching the grounds of the ruling of the court and rendering the evidence incompetent. The witness's knowledge on the subject clearly showed that his evidence was material and competent to establish the ownership of the logs in question.

At the conclusion of plaintiff's testimony appellant moved for a nonsuit upon the ground that the evidence adduced failed to identify the lumber seized by the plaintiff under the writ as lumber manufactured out of the logs which respondent claimed were wrongfully taken from its possession and detained by defendant, and that there was no evidence tending to show title or right of possession to the logs in respondent. The evidence adduced tended to show that respondent boom company was

engaged in gathering stray logs in the Mississippi river and its connecting waters; that its employees had gathered the logs in dispute, brailed them, and left them in possession of two of its agents; and that they were wrongfully dispossessed by Hackett, of whom appellant purchased them. It also appeared that the boom company was engaged in this business by and with the consent of the parties who had lost the logs and of Mr. Chute, to whom title had been conveyed by the original owners for the purpose of gathering them together after their escape from the original owners. These facts and circumstances furnished sufficient ground for submitting to the jury the question whether respondent was in lawful possession of the logs and had a right to reclaim them under the writ of replevin. The findings of the jury upon these questions practically rest upon the evidence which had been received before the motion for a nonsuit was made. We think that the evidence is sufficient to support the finding, and that the court properly denied the motion for a nonsuit.

It is contended that the court erred in striking out the jury's negative answer to question No. 4 of the special verdict and in answering it in the affirmative. By this answer the jury found that appellant did not wilfully and indiscriminately intermix these logs and the lumber he manufactured out of them with the logs and lumber owned by him. It is apparent from the opinion of the trial court that it concluded that the fact was undisputed in the case. It appeared that Hackett had no title to or interest in the logs when he sold them to appellant; that appellant had no knowledge or information to the effect that Hackett was a dealer in logs or lumber or that he was in any way engaged in the lumber business; and that appellant purchased the brail of logs for the small sum of $19.50, when he well knew that they were worth a much larger sum in the market. The jury's findings that he had good reason to believe at the time he purchased the logs that Hackett had secured possession of them wrongfully, that he had been in-

formed on the day of purchase that they had been wrongfully and forcibly taken from the boom company, and that it claimed them as its property under arrangements with the original owners, and warned and notified him not to manufacture them into lumber, were all well supported by the evidence. It is significant, as bearing on this subject, that appellant refused to identify the lumber or to give the amount manufactured by him out of the logs, and that he offered no explanation and made no claim that the lumber was so intermingled with other lumber in his yard. It also appeared in evidence that lumber bearing the log marks was intermingled with other lumber in piles, which, under the finding of the jury, must have contained a much larger quantity than the logs yielded. This state of the evidence left no basis for a finding that there was no intentional confusion of this lumber with that of appellant, and justifies the action of the trial court in changing the answer to question 4.

When the verdict had been so framed the court awarded judgment in respondent's favor for the recovery of the logs and lumber seized by the officer, and for costs. It is contended that this is error. The jury found that the brail of logs contained 8,000 feet of manufactured lumber, that the total value of the logs was $120, and that the quantity recovered by respondent was worth $30, which, on the basis of valuation found by the jury, would be one fourth of the whole amount; thus showing that three fourths of the logs had been manufactured into lumber, which, upon this calculation, amounted to 6,000 feet. The officer seized 20,000 feet of the manufactured lumber, or 14,000 feet in excess of the amount the logs yielded. The trial court awarded judgment for the recovery of the whole amount seized by the officer, upon the ground that a wrongful confusion of goods operates as a forfeiture of the interest of the wrongdoer in all of the goods so intermixed. To operate such a forfeiture it must appear that the lumber manufactured out of the respondent's logs and that of appellant with

which it was mixed were so different in description, quality, and value that the whole mass could not be ratably apportioned in proportion to the quantities contributed to the whole mass by the original owners. The evidence does not tend to show that there was a difference in description, quality, and value of the lumber so mixed. There is nothing to show that such an apportionment could not be made, and that respondent would not be fully compensated for its damage by having its proportion of the whole mass restored to it. The legal principle governing such a situation is stated by Judge Cooley in terms as follows:

"Even if the commingling were malicious or fraudulent, a rule which would take from the wrongdoer the whole, when to restore the other his proportion would do him full justice, would be a rule wholly out of harmony with the general rules of civil remedy, not only because it would award to one party a redress beyond his loss, but also because it would compel the other party to pay, not damages, but a penalty." Cooley, Torts, 53. For cases on this subject, see *Eldred v. Oconto Co.* 33 Wis. 133; *Jenkins v. Steanka,* 19 Wis. 126; *Starke v. Paine,* 85 Wis. 633, 55 N. W. 185; *Lupton v. White,* 15 Ves. Jr. 432; 6 Am. & Eng. Ency. of Law (2d ed.) 595–597; 8 Cyc. 571.

We are constrained to hold that the judgment is erroneous, in that it awarded to respondent the right to hold and retain the logs and 20,000 feet of lumber seized by the officer under the writ of replevin. Respondent was entitled to the logs seized, and to its full proportion out of the entire quantity of lumber seized, namely, 6,000 feet, and the costs of the action; and appellant was entitled to a return of the excess of the lumber so seized, or, if the lumber could not be returned, to its value, without any damages for the seizure of such excess under the writ of replevin.

Appellant's printed case fails to comply with Rule VIII of this court in that it contains duplication of record matters, and a failure to properly abridge the record to the extent

necessary for the proper presentation of the questions before
this court. For these reasons we limit appellant's taxation of
costs for the expense of printing the case to eighty-five pages.

*By the Court.*—The judgment of the circuit court is here-
by reversed, and the cause is remanded with directions to
enter judgment according to this opinion; appellant to re-
cover costs on this appeal.