WHITMAN *v.* MUSKEGON LOG LIFTING & OPERATING CO.

1. LOGS AND LOGGING—LOG MARKS—FAILURE TO RECORD—EFFECT.

   Failure of log owners to record their log marks, as provided by section 5083, 2 Comp. Laws, does not deprive them of their property in logs bearing their marks, but only deprives them of the statutory presumption of ownership, leaving the title to be established by other means, one of which might be the fact that the logs were stamped with a particular mark which the claimant had used and put upon all his logs.

2. SAME—ABANDONMENT—SUNKEN LOGS.

   The fact that marked logs, placed in a river for transportation to market, sunk and remained for a time on the bottom of the river, is no evidence to support a finding that the owner had abandoned them.

3. SAME—ABANDONMENT—INTENTION—NECESSITY—MARKED LOGS.

   Where it appears that the owners of logs marked and placed in a river for transportation have made annual efforts to re-

cover, and in fact have recovered each year many of the dead-heads from the bottom of the river, the circumstances negative the existence of the intention necessary to show an abandonment of such of the sunken logs as bear distinguishable marks.

4. SAME—OBLITERATED MARKS.

It being presumable that all logs placed in the river were marked as the law requires, and that the abrasions of transportation have obliterated the marks upon such as no longer bear distinguishable marks, the proof supporting the finding that there has been no abandonment of the marked logs applies with equal force to those upon which the marks are no longer distinguishable.

5. SAME—OWNERSHIP OF UNMARKED LOGS.

The fact that the owners of deadhead logs cannot say to which of them the unmarked ones respectively belong does not divest them of the ownership, nor of the right to make any contract they see fit with another to raise their property, and according to a custom long established to allow their contractor to retain such of the logs as are without marks.

6. EVIDENCE—JUDICIAL NOTICE—OPERATION OF NATURAL LAWS.

The court will take judicial notice that when the specific gravity of a saw log becomes greater than that of water it will sink to the bottom, and that in streams of any considerable current such sunken logs will become embedded in the soil to a greater or less extent.

7. NAVIGABLE WATERS—RIGHTS OF NAVIGATORS—STREAMS.

In navigating a stream for any lawful purpose, the navigator, for that purpose, may make all such reasonable use of such stream as may be necessary which does not deprive the riparian proprietor of his rights, or the enjoyment thereof.

8. SAME—USE OF STREAM—RECOVERY OF LOGS.

The use of a stream by the navigator of logs thereon to recover sunken logs, marked or unmarked, not abandoned or lost, from the bed of the stream, without injury to its banks or unlawful trespass thereon, is no unlawful interference with the rights of the riparian owner, but is a proper and lawful use of the stream incident to the business of navigation.

9. SAME—RIPARIAN RIGHTS—OWNERSHIP OF SUNKEN LOGS.

Deadhead logs lying in the bed of the stream in which they were placed for navigation, partly or wholly embedded in the soil, but neither lost nor abandoned by the original owners, are not the property of the riparian proprietor.

10. SAME—BANKS OF STREAM—USE BY NAVIGATORS.

The owners of deadhead logs recovered from the bed of a
stream have no right to pile them on the banks, and in doing
so are trespassers. Such trespass, however, gives the ripa-
rian owner no title to the logs, though he has his remedy at
law.

Appeal from Montcalm; Davis, J. Submitted October
18, 1907. (Docket No. 47.) Decided May 26, 1908.

Bill by Edgar O. Whitman against the Muskegon Log
Lifting & Operating Company to restrain the removal of
logs from the bed of a navigable stream. From a decree
for complainant, defendant appeals. Reversed, and bill
dismissed.

*John G. Anderson* and *Wil'iam A. Norton* (*Edwin
H. Lyon*, of counsel), for complainant.

*Nims, Hoyt, Erwin & Vanderwerp*, for defendant.

McALVAY, J. Complainant, a riparian owner along
the Muskegon river, a stream used for many years for
the navigation, floating, and driving of saw logs, and
other forest products, filed his bill of complaint against
defendant company seeking to restrain it from digging
up and removing from the bed of said stream all saw logs
and other forest products, and from taking away from
the premises of complainant all such logs and products
already taken from the bed of said stream and piled upon
said premises by defendant, claiming to be the owner of
all such property by reason of his riparian proprietorship,
and praying the court to so decree and determine. From
a decree granting complainant full relief as prayed, de-
fendant has appealed.

The Muskegon river has been used for the navigation
of forest products to as great an extent as any river in
Michigan. Many hundreds of millions of feet of saw
logs, and other forest products, have been lumbered and
put afloat in the waters of this river to be floated to the

places where they were to be manufactured. That it is and always has been a navigable stream for such purposes is not in dispute in this case. This record shows that in navigating forest products along a stream certain logs, from various causes, sink to the bottom, and, by the action of the water, some of them become more or less embedded in the soil. These are called sunken logs and "deadheads."

Defendant is a Michigan corporation, operating on Muskegon river, engaged in raising these sunken and deadhead logs from their bed, under contract with the original owners of a large number of these logs to raise from the bed of the river logs bearing their log marks, and float them to their mills at Muskegon for an agreed consideration. Owners of logs put in the water to be run down stream, for purposes of identification, put their log mark upon each log.

By statute logs put into the water must be marked with log marks duly recorded, and logs having marks impressed thereon are presumed to belong to the person owning the recorded mark. On some of the logs raised by defendant the marks have become obliterated. Upon these logs defendant has placed its own mark as soon as they were raised. All the logs when raised are water soaked and heavy. They are placed upon the banks of the river at different points in rollways to dry, so that they will float when put into the water. There are now piled upon the banks of the river, upon complainant's land, logs which have been raised from the river bed by defendant company.

The facts in the case are practically undisputed. The court granted complainant relief upon the ground that the marked logs had been abandoned by their original owners, and, if not abandoned, were in the same situation as the unmarked logs because the marks were not properly recorded, and that all logs both marked and unmarked belonged to the riparian proprietor by virtue of his ownership of the soil to the middle thread of the

stream, and defendant had no right to recover or remove any of them.

Appellant alleges that the case presents the following questions:.

(1) As to the title to logs still in the bottom of the river and upon which the original log marks are distinguishable.

(2) As to the title to logs still in the bottom of the river and upon which the marks have become obliterated.

(3) As to the right of defendant to go upon the river to recover both marked and unmarked logs.

(4) As to the title to logs which defendant company has already removed from the bed of the river and which are now piled on complainant's land. .

1. The court held in effect that the log marks in question were not recorded according to law and were no evidence of identification of the logs of the owners of the marks. In this case it is not necessary to consider the construction given by the court to section 5083, 2 Comp. Laws, relative to recording log marks (nor do we intimate that such construction was correct) for the reason that the failure to record the log marks could only deprive the owners of the statutory presumption of ownership. The fact that the statute makes the recorded mark prima facie evidence of ownership of logs upon which it is impressed is no warrant for the inference that the owner is deprived of his property, title to which could be established by other means, one of which might be the fact that his logs were stamped with the mark in dispute which he in fact used and put upon his logs. *St. Paul Booming Co.* v. *Kemp*, 125 Wis. 138; *Weiler* v. *Coleman*, 71 Pa. 346.

The court held that the marked logs had been abandoned and therefore belonged to complainant as riparian proprietor. We do not find from this record any evidence upon which to base such a finding. Complainant introduced no testimony on the question of abandonment, and the fact that the marked logs were in the river bottom is of itself not sufficient to support such finding. There is

abundant proof to show that these logs were not abandoned. The testimony of complainant and his witnesses, and the witnesses for defendant, shows, without contradiction, that efforts were made by the owners each year for many years to recover sunken logs and many were in fact recovered each year. The authorities are harmonious in holding that there must be an intention to abandon, without which there can be no abandonment. "The intention is the first and paramount object of inquiry." 1 Cyc. p. 5, and cases cited.

"The mere failure to exercise the act of removal would not operate as an abandonment or proof of an intention to abandon." *Log-Owners' Booming Co.* v. *Hubbell*, 135 Mich. 65 (4 L. R. A. [N. S.] 573).

In the case at bar an abandonment of property of great value is claimed upon the bare fact that the act of removal has not yet been exercised. In addition to the evidence as to the steps taken each year by the owners of the log marks to recover their sunken logs, the proofs show that they have not yet abandoned logging upon the Muskegon river. There was no abandonment, and the title to the marked logs already removed from the water and those still remaining in the bottom of the river is in the owners of the marks and those lawfully claiming under them.

2. It appears undisputed in the record that for more than 30 years a custom, known and acquiesced in by all log owners and operators upon Muskegon river, has prevailed, that sunken and deadhead logs raised from the bottom of the river upon which log marks are no longer distinguishable were retained by the booming company engaged in such work as its property and were stamped with its log mark. In raising these logs defendant is the successor of the Log-Owners' Booming Company, which is still operating on Muskegon river as a booming company, but not engaged in the work of raising sunken and deadhead logs; that work being carried on by defendant under contracts with the owners of nearly all the log

marks originally used on the river for a consideration, to raise their logs and bring them to Muskegon. The testimony of complainant and his principal witness shows that they had knowledge of such custom, and that complainant as late as 1903 had entered into a contract with the booming company to raise logs sunken and embedded in the stream along his property and did do so and delivered all such logs marked and unmarked to the company without questioning its right or title. Defendant urges that such custom has the force of law and cannot be questioned by complainant.

Complainant's claim in this case is that logs sunken in the river and partly or entirely covered with the soil by the action of the current and upon which the marks are no longer distinguishable belong to the riparian proprietor by virtue of his ownership of the soil to the middle thread of the stream. The distinction is made by complainant between personal property lost and found upon the surface and the same kind of property found embedded in the soil. It being admitted that the former may belong to the finder. Can it be said that any of this property may be treated as lost property? If it is not to be so considered, then a discussion of the rights of the finder and the rights of the proprietor upon whose land the property is found, whether on the surface or embedded in the soil, would be foreign to the issue and fruitless.

We have already arrived at the conclusion in this opinion that the proof shows that the marked logs had not been abandoned. The title to that class of logs, then, continues in the original owners or their representatives and assigns. The law requires that all logs put into these waters must be marked. The presumption follows that the great share of these logs were originally marked for the purpose of identification, and that the abrasions of transportation have obliterated the marks upon the unidentified logs. Can we say on that account that the logs upon which the marks have become obliterated have been abandoned or lost? The efforts made every year by all

of the log owners to recover their sunken logs were directed to the whole mass of logs put into the waters to be navigated to market, and all kinds were recovered each year. The obliteration of the marks was necessarily gradual so that a log readily identified at one date might within a short time lose its identity as far as the mark was concerned. The proof which supports the finding that there had been no abandonment of marked logs will apply with equal force to those logs from which the marks have been obliterated by the abrasions of navigation. The loss of its mark does not divest the owner of his title to the log. The mark simply makes identification certain. We find no evidence in the case to show that these unmarked logs have been either abandoned or lost. The title therefore to such property is also in the original owners and their representatives and assigns. And the fact that they cannot say to which owner the unmarked logs respectively belong does not divest them of the ownership, nor of the right to make any contract or arrangement they see fit with defendant to raise their property, and according to a custom long established to allow it to take such of the logs as are without marks. It is taking no property from complainant which by purchase or gift has come to him. His only claim to it can be by reason of his riparian ownership which we will next consider.

3. An immense commerce in the navigation of logs and forest products upon this stream has been carried on for many years by those engaged in lumbering. All the logs now in the stream were put into its waters by the owners for the sole purpose of navigation, and for that purpose this stream is a public highway, as this court has frequently decided. This court will take judicial notice that when the specific gravity of a saw log becomes greater than that of water it will sink to the bottom, and that in streams of any considerable current such sunken logs will become embedded in the soil to a greater or less extent. This, we assert, is one of the incidents of the use of the stream for the lawful purpose of navigating logs and

forest products.   It is not necessary to cite authorities to show that in navigating a stream for any lawful purpose the navigator, for that purpose, may make all such reasonable use of such stream as may be necessary and which does not deprive the riparian proprietor of his rights, or the enjoyment thereof.   We hold that to recover property, marked or unmarked, not abandoned or lost, from the bed of a stream without injury to its banks or unlawful trespass thereon, is no unlawful interference with the rights or enjoyment of the riparian owner.   Such recovery would be a proper and lawful use of the stream, and would be a right incident to the business of navigation. As we understand the argument of complainant, this right is conceded to an owner recovering his property about the title and the identification of which there is no dispute.

4. From the views herein expressed, we hold that the logs now remaining upon complainant's premises, which have been raised from the bed of the river and placed there by defendant, are not the property of complainant. Upon complainant's own theory they could not be held to be his property, for the reason that there is no evidence in the case identifying these particular logs as having come from the bed of the stream on complainant's land.   The claimed admission in the answer does not so state.

Defendant very properly disclaims, in the oral argument, any right to put these logs on complainant's land. Its agents and servants in so doing were unlawfully trespassing upon complainant's premises.   Such trespass however did not operate to give complainant any title to the property; for all of which trespasses complainant has an adequate and complete remedy at law.

Our conclusion is that the circuit judge was in error in granting relief to complainant.   The decree is reversed, and a decree will be entered in this court dismissing the bill of complaint, with costs of both courts.

OSTRANDER, HOOKER, MOORE. and CARPENTER, JJ., concurred.