# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1919.

---

## Kee and Chapell Dairy Company, Defendant in Error, v. Pennsylvania Company, Plaintiff in Error.

### Gen. No. 24,549.

1. ABANDONMENT, § 2*—*when evidence shows property was not abandoned.* In an action of replevin by a dairy company against a railroad company to recover possession of milk bottles bearing plaintiff's mark which had been gathered up, some from dump heaps, by other persons and delivered to defendant for shipment, evidence *held* sufficient to show that plaintiff had not abandoned the property.

2. REPLEVIN, § 125*—*when property identified.* Milk bottles of a dairy company which had been gathered up, some from dump heaps, by certain persons, and delivered to a carrier for shipment, are sufficiently identified, in a replevin action, by evidence that bottles marked with plaintiff's name as were those taken on the writ were manufactured for the plaintiff and that plaintiff had never parted with title to them.

3. REPLEVIN, § 123*—*when evidence sufficient.* In an action of replevin by a dairy company against a railroad company to recover possession of certain milk bottles which bore plaintiff's mark and had been gathered up, some from dump heaps, by certain persons, and delivered to defendant for shipment, evidence *held* sufficient to sustain a judgment for plaintiff.

(1)

Kee & Chapell Dairy Co. v. Pennsylvania Co., 214 Ill. App. 1.

Error to the Municipal Court of Chicago; the Hon. EDMUND K. JARECKI, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 7, 1919.

WILLIAM J. STAPLETON and EPSTEIN & FEIWELL, for plaintiff in error.

LEVINSON & HOFFMAN, for defendant in error; ARISTA B. WILLIAMS and L. LOEWENSTEIN, of counsel.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

An action of replevin was begun in the Municipal Court of Chicago by plaintiff against defendant, and on March 17, 1918, the court entered a judgment in favor of the plaintiff that it have and retain possession of property replevied with one cent damages and costs against defendant. Defendant seeks to reverse this judgment.

It is shown by the pleadings filed in the cause and by the evidence that the plaintiff asserts ownership of 2,000 milk bottles which had been delivered to defendant, a common carrier.

It is insisted on behalf of the defendant that the plaintiff on the trial failed to prove the identity of the property or its title thereto; that it failed to make demand for the property before suing out the writ of replevin, or to tender to defendant, which is a common carrier, compensation for the benefit of persons claiming such for work, labor and moneys expended in reclaiming the bottles; that the plaintiff by its conduct had indicated an intention to abandon and relinquish all claim or title to the bottles, and that the court erred in its rulings on the admission of evidence.

The evidence heard upon the trial tends to show that at least a part of the bottles in question were gathered from a city dump and were delivered to secondhand dealers; that the plaintiff and others engaged in the milk business had established an organization

known as "The Illinois Milk Dealers Association," which association, for the benefit of plaintiff and others, had entered into an arrangement with the B. Horwich Company, under which that company was authorized, "to pick up our bottles wherever they may be found," and one Hogenson was also employed on a salary basis to search for and locate lost bottles of the plaintiff and other dealers.

Plaintiff's manager testified that the 2,000 bottles in question were of the same kind as bottles introduced in evidence, bearing the marks of identification hereinafter referred to; that it was the custom of plaintiff, the Bowman Company and the Borden Company, also large dealers in milk, to exchange with each other any bottles gathered by each which belonged to the others; that the plaintiff company never at any time sold its bottles; that they were delivered to customers with their contents and that plaintiff's drivers were under instructions to return the bottles when empty to plaintiff; that records were kept by plaintiff which showed "the loss on each route in each section of the city"; that the contracts for the bottles were made by the witness on behalf of plaintiff with glass factories; that the market value of the bottles in the fall of 1917 per gross was approximately $6.20 for quarts, $3.40 to $3.50 for pints, and $3 to $3.40 for half pints.

The evidence shows that there was blown in the bottles in question certain insignia and trade-marks in the form of shields, words indicating the capacity of the bottles and the words, "Property of Kee & Chapell Dairy Co." While there is some evidence to the effect that money was rebated to customers on the return of empty bottles to plaintiff, it cannot be held from the evidence that the plaintiff had at any time entered into a contract with such customers for a sale of the bottles to them. It is clear from all of the evidence in the record that the plaintiff had not at any

time intended to transfer its title to the bottles, even temporarily, to its customers.

The fact that the plaintiff had agreed to pay the B. Horwich Company at the rate of 15 cents per dozen for the return of its bottles does not, in our opinion, indicate anything more than an agreement to pay that company for a service performed by it for the plaintiff; this is also true of its relations with Hogenson, who worked on a salary basis. In the course of its business considerable numbers of bottles were lost to plaintiff, but it was shown by the testimony of its manager that these losses were borne by the plaintiff and that they were not charged to its drivers; the plaintiff kept a record of its bottles and it refused to serve customers who failed to return in sufficient numbers bottles delivered to them.

The evidence also discloses that it was the practice of certain secondhand junk dealers, through their employees, to acquire junk and bottles at a city dump; that these dealers and the persons employed by them gathered whatever bottles could be found at the city dump and elsewhere without reference to whether they bore lettering indicating their ownership. One of these dealers testified that he knew that the Horwich Company was employed to gather bottles for plaintiff and other dealers and that his firm had turned over about two carloads a year of such bottles to the Horwich Company.

It was shown on the trial that as a result of a ruling of Food Administrator Hoover, milk dealers were required to sell milk to dairies at 10 cents a quart and to make a charge of 5 cents to cover the cost of the bottle, which practice did not begin, however, until October 3, 1917, the day on which the writ of replevin was issued.

The principal question presented here is whether it can be held that the record contains sufficient evidence tending to show that the plaintiff had title to the prop-

erty in question at the time the writ of replevin was issued. Ziff & Berman appear to have claimed on the trial that they were the owners of the property. They did not intervene in the suit and their rights, if they have such, in the property are not directly before us for determination.

In Illinois Cent. R. Co. v. Chicago Great Western Ry. Co., 177 Ill. App. 431, a case quite similar in its essential facts to the instant case, it was held that the evidence before the trial court was sufficient to support a finding that the property in question (certain brasses) belonged to the plaintiff in the suit. In that case it appears that the Illinois Central Railroad Company had purchased all of its brasses from the Hewitt Manufacturing Company; that when they became so worn as to be unfit for use they were in turn resold by the railroad company to the Hewitt Company. In some manner not shown by the evidence, N. Deutsch & Company had obtained possession of a quantity of brasses and delivered them to the Chicago Great Western Railway Company. It was shown by the evidence that these brasses were made specially for the Illinois Central Railroad Company and bore the markings "Illinois Central" or "I. C. R. R." The Illinois Central Company based its claim to the brasses upon the fact that it had bought them from the Hewitt Company, and that without its knowledge or consent, N. Deutsch & Company had obtained possession of them.

In the case at bar the evidence tends to show that the plaintiff had purchased its bottles of glass manufacturers who stamped thereon the trade-mark and the words indicating the ownership of the plaintiff.

In Independent Brewing Ass'n v. Cooke Brewing Co., 169 Ill. App. 347, it was held that the fact that words or signs indicating the ownership of bottles were blown therein was not conclusive as to the ownership thereof. In its opinion, however, the court said:

"While no witness could positively say that he ever

saw any one of the bottles, and no witness could testify to whom beer had been sold in these identical bottles, still we think the evidence warranted the court in finding that the bottles were the bottles of the defendant in error, and that they had gotten out of its possession by sale of beer in the bottles with the agreement that the bottles were the bottles of the defendant in error, and that the purchasers had no title thereto, and no right to transfer the title thereto, and were under contract to return them to the Independent Brewing Association as its property."

It is evident from the nature of the business conducted by plaintiff that a considerable loss of bottles is a necessary incident to carrying on the business, and the evidence shows that the plaintiff and other milk dealers had taken reasonably efficient steps to recover such bottles as might, in one way or another, become lost. It is clear from the evidence that the bottles used by plaintiff were too valuable to permit their abandonment after their initial use as milk containers. The quart bottles cost approximately 4½ cents each, and in the normal course could be used an indefinite number of times for milk deliveries. In any event the evident conclusion of the trial court that the property was not abandoned by the plaintiff finds support in the evidence. That some of these bottles were found at the city dump, as contended, is not conclusive as to plaintiff's title. If it be conceded that this be the fact, their presence there unaccounted for does not necessarily show, when the character of the bottles and the use to which they are put are considered, that the plaintiff had abandoned its right to them. It is not shown by the evidence that any other bottles were manufactured, sold or dealt in, bearing similar indelible markings to those on the bottles in question in this suit, and that plaintiff would abandon property so valuable and so necessary to its business is highly improbable.

Plaintiff's title to the property replevied is strongly

supported by the evidence admitted on the trial. The bottles were sufficiently identified on the trial by the evidence that bottles marked as were those taken on the writ were manufactured for the plaintiff and that plaintiff had never parted with its title thereto.

In *Livermore v. White,* 74 Me. 452, a case relied upon by defendants, the court said:

"The title of the finders vanishes when the owner is known. These goods were not lost. The facts negative a loss by the owner."

*St. Louis Dairy Co. v. Northwestern Bottle Co.* (Mo.), 204 S. W. 281, is very similar in its facts to the case at bar. In the syllabi of that case it is stated:

"Abandonment is a conscious purpose on the part of the owner of personal property to so treat the same as to manifest an intention to thereafter neither use nor retake it into his possession, and where the owner of personal property either throws it away himself or knowingly permits another to throw it away, having no intention to either again use or take such property back into his possession, such acts constitute abandonment."

Ziff & Berman on the trial appear to have claimed ownership of the bottles replevied, notwithstanding the fact that they seem to have had knowledge of the methods employed by plaintiff and other milk dealers to gather, assort and return bottles, at considerable expense, to their rightful owners. We are of opinion that a strong presumption arises from the evidence in favor of plaintiff's claim to the bottles. *Independent Brewing Ass'n v. Cooke Brewing Co.,* 169 Ill. App. 347; *Whitman v. Muskegon Log Lifting & Operating Co.,* 152 Mich. 645.

The evidence shows that on October 3, 1917, an agent of plaintiff, having information that the milk bottles were in the possession of defendant, made demand therefor upon its "chief agent" or his assistant, who, in reply to a statement made by plaintiff's agent that "there is a carload of milk bottles going away

belonging to the people I am representing. I am going to take these bottles out," said, "If you are going to take them out, you have got to take them out legally." Under the circumstances it was not to be expected that the common carrier would relinquish possession of the property to a claimant unless title was established thereto in a legal proceeding, and plaintiff's agent was justified in interpreting the remark of defendant's . agent as having this meaning. Clearly, as between the defendant, Pennsylvania Company, and the plaintiff, the evidence warrants the finding and judgment of the trial court.

The judgment of the Municipal Court will be affirmed.

*Affirmed.*